

# THE ATTORNEY GENERAL

## OF TEXAS

### AUSTIN 11, TEXAS

WILL WILSON
ATTORNEY GENERAL

May 22, 1957

Honorable Wardlow Lane, Chairman      Opinion No. WW-138
State Affairs Committee
Texas State Senate                    Re: Constitutionality of Senate
Austin, Texas                              Bill 390

Dear Senator Lane:

  This is in reply to your request for an opinion of this office as to the constitutionality of S. B. 390.

  The proposed Act amends Article 6450[1] reaffirming the existing authorization of the Railroad Commission[2] to adopt rules and regulations to govern its investigations, hearings, consideration and approval of a rail carrier's application to discontinue any portion of its service, to abandon or change the location of any office, terminal or station, or to take any action which requires the Commission's approval.

  New legislation in this Bill provides that when any requested action by a rail carrier is found by the Commission to affect the employees to their detriment, then as a condition precedent to the granting of the application, the rail carrier must pay the employees for a designated period of time, unless there is a prior contract between the applicant and its employees. Section 2 of the Act contains a severability clause; Section 3 declares that an emergency exists and suspends the three constitutional readings requirement.

  Article 10, Section 2, of the Texas Constitution authorizes the Legislature to enact law regulating railroad tariffs, and to establish agencies to accomplish this purpose. In 1891, the Railroad Commission was established. (Now Article 6445). In the same year, the Legislature prescribed duties of the Commission in regulating the Texas rail carrier and authorized the Commission to regulate in areas beyond that expressly set forth in the Constitution. The provisions of S. B. 390 are not expressly authorized in the Constitution, therefore the question you ask, in substance, is whether this Bill violates other provisions of the Constitution.

  S. B. 390 authorizes the Commission to adopt procedural rules in its hearings of applications having to do with three separate and distinct

purposes: (1) rates, (2) affecting service, and (3) closing or removing of offices, shops, terminals and similar facilities from one location to another.

Rates:

That part of S. B. 390 authorizing the Commission to adopt procedural rules for rate hearing is in substance the same as the present Article 6450. This proceeding is authorized in the Constitution, Article 10, Section 2.

Closing or removing stations, shops and terminals:

That part of S. B. 390 requiring Commission approval to close stations, and to change location of shops and terminals supplements present statutes.

Commencing in 1889, the Legislature passed a series of statutes pertaining to keeping shops, terminals, repair shops and similar facilities at certain places. Article 6275 (maintaining general office in Texas); Article 6277 (maintaining facilities where the railroad had so contracted to keep them, if there was such a contract); Article 6278 (providing that certain officials had to maintain their principal office and place of residence in Texas); Article 6280 (to do repair work in Texas); Article 6281 (to keep the company's books in Texas); and Article 6286 (no railroad company shall change the location of its general office, machine shops, roundhouses, or home terminals except with permission of the Railroad Commission, originally passed in 1915 and amended in 1929).

These Articles relating to the location of the general office, shops, and terminals have been sustained as being constitutional. International and G. N. Railway Co. v. Anderson County, 174 S.W. 305 (Tex.Civ.App. 1915, error ref.) affirmed, 246 U.S. 424, 62 L.Ed. 807 (1918).

That part of S. B. 390 requiring prior approval of the Commission before changing locations of its facilities is constitutional.

Restricting or abandonment of service:

S. B. 390 supplements present statutes. Article 6479 authorizes rail carriers to restrict or abandon passenger service when the Commission finds (1) such service is not necessary to meet the public's demand, or (2) the expected revenue does not pay the cost of the service plus a reasonable return upon the property used in giving this service. Article 6479(a) authorizes

the rail carrier to restrict freight service when the Commission finds that the service which it, the Commission, prescribes is adequate to meet the public's requirement.

In Texas and N. O. Ry. Co. v. Railroad Commission, 145 Tex. 541, 200 S.W.2d 626 (1947), the Supreme Court interpreted Article 6479 as a Legislative directive to the Commission that it relax passenger service requirements when a finding was made that the service was not paying for itself. To the same effect is Texas and N. O. Ry. Co. v. Railroad Commission, 220 S.W.2d 773 (Tex.Civ.App. 1949, error ref.), where the Court held that the railroad's application to discontinue passenger service should be granted when it was shown that the service is losing money.

This part of S. B. 390 directing the Railroad Commission to adopt rules relating to the abandonment or restrictions of service is constitutional.

The condition precedent imposed upon the Commission's action:

Under S. B. 390, before taking action on an application, the Commission must make a finding as to the effect of the proposed action upon the employees; if to their detriment, then as a condition precedent to further action, the Bill requires that prescribed benefits for a designated period be provided for the employees so affected.

This condition precedent involves the questions of whether it is a regulation of the rail carrier which is to protect the public interest, as contrasted to protection of private interests. The courts have consistently maintained this distinction. In San Antonio & Aransas Pass Ry. Co. v. Wilson, 19 S.W. 910 (Tex.Civ.App. 1892), the Court held a statute imposing a 20 per cent penalty upon railroad companies for failing to pay promptly its employees to be unconstitutional, because it was not passed to prevent threatened damage to the public, but rather was a regulation of internal affairs. Here the Court pointed out the two-fold character of the rail carrier--public and private. It was held that this was class legislation without proper justification for the classification, stating that the same argument which could be made to sustain this statute could be extended to every public agency that contributed to the public necessity; it is unconstitutional to single out one type of corporation and subject it to a penalty which another corporation in a similar situation was not subject to.

The condition imposed upon the Commission's action in S. B. 390 is a regulation which affects the internal operation of the railroads -- the

continued necessity of employment, wages and the payment of wages to employees no longer in the employment of the company. It, in effect, requires that the regulations of the carriers in the discharge of their duties to the public, be subordinated, in some instances, to matters affecting internal affairs of the company.

As a general statement of constitutional interpretation of legislation affecting labor and management, it can be said that the statutes which have the effect of regulating internal operations of a privately owned enterprise is not, on this ground alone, unconstitutional. These statutes have been sustained largely as a valid exercise of the State's police power.

The due process clause (Article 1, Section 3, Texas Constitution) does not prevent an authorized exercise of the police power. It is constitutionally permissible for the Legislature to classify subject of legislation. However, the classification must not be arbitrary or unreasonable and must be based upon substantial distinction which makes one class really different from another. Spann v. City of Dallas, 111 Tex. 350, 235 S.W. 513 (1921); Fort Worth & D. C. Ry. Co. v. Welch, 183 S.W.2d 730 (Tex.Civ.App. 1940, error ref.). In Barbier v. Connolly, 5 S.Ct. 357 (1885), the Court stated, ". . . that equal protection and security should be given to all under like circumstances in the enjoyment of their personal and civil rights . . . that no greater burdens should be laid upon one than are laid upon others in the same calling and conditions."

There are several types of transportation facilities available to the public other than rail. Each of these different types are subject to classification for the purpose of regulating their services to the public in matters peculiar to their type of service and operation.

In our opinion, matters affecting the carrier and its employees are common to all types of carriers. There appears to be no reasonable basis for the classification of the rail carrier alone (as is done in S. B. 390) before the Commission is authorized to make orders affecting the rail carrier and its relations with the public in matters of rates, service and location of physical facilities. The same reason that would exist for the protection of employee interests in rail exists in all types of transportation. For this reason, therefore, we conclude that that part of S. B. 390 which creates the condition precedent to the Commission's action is unconstitutional; it is class legislation and violative of the Texas constitutional provision requiring equal rights or obligations of all in a similar class.

In reaching this conclusion we are not unaware of the decision of the U. S. Supreme Court in U. S. v. Lowden, 308 U.S. 225 (1935). Here the Court upheld the validity of an order entered by the Interstate Commerce Commission requiring that certain benefits be provided for employees of railroads before permitting the consolidation of the applicant railroad companies. In our opinion, the problem before the Interstate Commerce Commission case was so different in granting the permission to the consolidation of companies operating thousands of miles of lines in several states that the opinion rendered does not necessarily control the determination of the validity of S. B. 390.

## SUMMARY

That part of S. B. 390 which permits the Railroad Commission to adopt rules and regulations to govern its hearings in matters affecting rail carriers, in changes of rates, service rendered to the public and changes of location of any office, terminal or station is constitutional. That part of S. B. 390 which requires as a condition precedent to the Commission's action on such application that it, the Commission, must find that the employee will be in no worse condition after the change than before or to pay wages for a designated period is unconstitutional as being class legislation and applicable to only one kind of a common carrier, and violates Article 1, Section 3, Texas Constitution.

Very truly yours,

WILL WILSON
Attorney General of Texas

By _Edwin P. Horner_
Edwin P. Horner
Assistant

EPH:tiw

APPROVED:
OPINION COMMITTEE:
H. Grady Chandler, Chairman
Houghton Brownlee, Jr.
Lonny Zwiener
Wallace Finfrock

REVIEWED FOR THE ATTORNEY GENERAL
BY:  Geo. P. Blackburn

---

[1] All Articles in this opinion refer to Vernon's Civil Statutes, 1925.

[2] The Railroad Commission of Texas will hereafter be referred to as the Commission.